Jeffrey A. Silvestri, Esq.
Nevada Bar No. 5779
Craig A. Newby, Esq.
Nevada Bar No. 8591
McDONALD CARANO WILSON LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Telephone:   (702) 873-4100
Facsimile:   (702) 873-9966
Email: jsilvestri@mcdonaldcarano.com
       cnewby@mcdonaldcarano.com

David S. Bloch (appearing *pro hac vice*)
Jennifer A. Golinveaux (appearing *pro hac vice*)
Thomas J. Kearney (appearing *pro hac vice*)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA  94111-5894
Telephone:   (415) 591-1000
Facsimile:   (415) 591-1400
Email: dbloch@winston.com
       jgolinveaux@winston.com
       tkearney@winston.com

Attorneys for Plaintiff
AEVOE CORP.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| AEVOE CORP., a California corporation, | Case No. 2:15-cv-00149-RFB-CWH |
| Plaintiff, | |
| v. | **PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF** |
| I-BLASON LLC, a Georgia limited liability corporation, | |
| Defendant | |

**I.   INTRODUCTION**

i-Blason has agreed to Aevoe's proposed construction of "[a] spacer … having a sufficient thickness" and "[a]n enclosed air space between the transparent window." ECF No. 103 (Resp. Br.) at 1 fn. 1. Thus, the parties dispute only four remaining phrases: "touch screen protector," "plastic film," "without leaving adhesive residue," and "micro-particles." In each instance, the Court should adopt Aevoe's proposed construction.

With respect to the first three terms or phrases, claim construction is not a vehicle for a party to rephrase or redraft the straightforward claims of a patent to suit its needs. But that is what i-Blason attempts to do here. The '942 Patent is directed to a touch screen protector for handheld electronic devices used by ordinary consumers. In that context, "touch screen protector," "plastic film," and "without leaving adhesive residue" are common, everyday phrases that can be easily understood by a lay juror, to say nothing of a person of ordinary skill in the art. And when "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, [] claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). There is a "'heavy presumption' that a claim term carries its ordinary and customary meaning" "[i]n the absence of an express intent to impart a novel meaning to claim terms." *Teleflex Inc. v. Ficosa N Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). i-Blason has not provided any evidence to overcome the "heavy presumption" that Aevoe's inventors intended the plain and ordinary meaning of the words of the '942 Patent.

As to the fourth disputed term, i-Blason asks the Court to depart from its previous construction of "micro-particles," proposing instead a construction that would render claim 6 nonsensical. Chief Judge Navarro's prior construction of "micro-particles" is correct and supported by the evidence. And "[a] claim construction that renders asserted claims facially nonsensical 'cannot be correct.'" *Becton, Dickinson & Co. v. Tyco Healthcare Grp.*, LP, 616 F.3d 1249, 1255 (Fed. Cir. 2010). Accordingly, i-Blason's proposed constructions for the remaining four disputed terms should be rejected.

## II.    CLAIM TERMS IN DISPUTE

### A.    "Touch Screen Protector"

Aevoe's '942 Patent is titled "Touch Screen Protector," and there is no confusion as to what the invention is—"a touch screen protector for a hand held electronic device having a front face that includes a touch screen portion and an outer perimeter." ECF No. 1-1 ('942 Patent), Abstract; *see also* Claim 1. While the parties agree on the meaning of "touch screen," i-Blason claims that the word "protector" cannot be readily understood. But the patent makes it quite clear that the "touch

screen protector" claimed in the '942 Patent is used to protect the touch screen of a hand held electronic device, as described in, *e.g.*, the preamble of claim 1. The details of what the "touch screen protector" comprises are set forth in the claims themselves. i-Blason contends that "touch screen protector" may have multiple meanings to the jury, but it has not provided any example of where the alleged confusion lies. Resp. Br. at 4. That is because there is none; everyone knows that a "protector" is simply a thing that protects, and therefore, a "touch screen protector" is something that protects a touch screen.

i-Blason's proposed construction imports two additional concepts, namely, "cover" and "shields," neither of which are used in the specification to describe a touch screen protector. As pointed out in Aevoe's Opening Brief, "cover" is only referred to as part of a "cover sheet" when describing prior art "cover sheet" products, and "shield" is not used in the specification at all. ECF No. 81 (Op. Br.) at 6. i-Blason points not to the specification of the `942 Patent, but instead to the specifications of other patents listed on the face of the '942 Patent. But there is no reason to incorporate limitations from *other patents* merely because those patents are itemized in the `942 Patent's "References Cited." *Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 906 (Fed. Cir. 2005) ("The court must take care in its analysis, when locating in the written description the context for a disputed term, not to import a limitation from that written description.").

Moreover, construing this phrase to include "cover" and "shields" would beg the questions: what is a "cover" and when does it "shield" against damage? A "cover" may suggest something that is opaque rather than transparent, and i-Blason appears to use "shields" as a synonym for "protector," without explaining why a jury will understand the former word but not the latter. If i-Blason's concern is that it is unclear how a "touch screen protector" provides physical protection to the touch screen (Resp. Br. at 4), that function is described in the claims themselves, which at no point are directed to a "cover" that "shields." *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999) ("we do not permit courts to redraft claims" and "must construe the claims based on the patentee's version of the claim as he himself drafted it."). i-Blason's construction should be rejected in favor of the plain meaning of "touch screen protector."

### B. "Plastic Film"

As with "touch screen protector," the phrase "plastic film" can be easily understood by any jury. i-Blason has not provided any reason to think that the phrase would cause jury confusion. "These are not technical terms of art, and do not require elaborate interpretation." *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001); *see also Phillips*, 415 F.3d at 1314; *Teleflex Inc.*, 299 F.3d at 1325. As discussed in Aevoe's Opening Brief (Op. Br. at 7-8), i-Blason's construction is attempts to import the extraneous terms and limitations "transparent" and "cover" into an otherwise easily understood term. *See Playtex Prods., Inc.*, 400 F.3d at 906 ("The court must take care in its analysis, when locating in the written description the context for a disputed term, not to import a limitation from that written description."); *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("we will not ... import a limitation from the specification into the claims").

These purported limitations, moreover, are contradicted by the specification. As previously noted, "cover" is not used in the specification in the way i-Blason proposes; the only time it appears is as part of the phrase "cover sheet" as used in a prior art reference. *See* `942 Pat. 1:40-43 ("JP 2002328613 relates to a *cover sheet* comprising a transparent plastic film to protect a display screen") (emphasis added). The fact that JP 2002328613 claims a "transparent plastic film" that is used as a "cover sheet" does not mean that Aevoe's "plastic film" was directed to the same technology or was intended to refer to JP 200232613's "transparent" "cover sheet."

And i-Blason's contention that the "plastic film" needs to be transparent is belied by the specification. While portions of the "plastic film" are indeed transparent, as described in the claims and specification, there is no requirement that the entire "plastic film" be transparent. Claim 1 specifically claims that the "plastic film" has "a transparent *window* that corresponds in size to the touch screen portion." `942 Pat. Cl. 1 (emphasis added). As a matter of simple logic, this language means that the "plastic film" of claim 1 includes a "transparent window" corresponding to the screen of a touch screen device, but that portions of the plastic film that do not correspond to the touchscreen need not be transparent. *See* Op. Br. at 8. Indeed, the specification explicitly describes at least one embodiment in which the periphery of the plastic film is *opaque*. "In one preferred embodiment, the plastic film has a thickness of between about 0.15 and about 2 mm and *includes an opaque band about its periphery*." `942 Pat. 3:58-60 (emphasis added). Accordingly, it would be

4

contradict the claims and specification to require that the "plastic film" be transparent or a "cover." i-Blason's construction should be rejected in favor of the plain meaning of "plastic film."

### C. "Without leaving adhesive residue"

"Without leaving adhesive residue" means exactly what it says—when the touch screen protector is removed from the device, it does not leave adhesive on the touch screen device. By inserting the term "**any**," i-Blason offers a more restrictive construction in order to advance a hypertechnical non-infringement defense. But that is improper. The "bedrock principle" of patent law is that "the claims of a patent define the invention," *Phillips*, 415 F.3d at 1312 (quoting *InnovalPure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). And there is a "'heavy presumption' that a claim term carries its ordinary and customary meaning" "[i]n the absence of an express intent to impart a novel meaning to claim terms." *Teleflex Inc.*, 299 F.3d at 1325.

The invention of the '942 Patent is a novel touch screen protector, one "that can be easily attached and removed from a hand held electronic device that includes and is operable by a touch screen." `942 Pat. 1:11-13. The touch screen protector can be easily removed and reused because the adhesive "has sufficient adhesiveness to mount the protector onto the device but enables its removal without leaving adhesive residue on the device." *Id*. 5:29-31. It is described as allowing for "repeated cleaning and re-application ... so that the screen protector can be washed and reapplied repeatedly." *Id*. 5:35-37. The idea is simple—the claimed touch screen protector uses an adhesive that allows the protector to be removed and reused.

i-Blason wants to complicate things. It proposes a construction that would require microscopic analysis of touchscreen devices to see if *any* adhesive residue remains when its infringing touch screen protectors are removed from touchscreen devices. But the question is: does infringement really turn on whether there is a trace of "any residue" left on the electronic handheld device? It is neither reasonable nor just to so narrowly confine this easily understood term as to exclude otherwise infringing products merely because they use an inferior (but still reusable) adhesive. Moreover, "we do not permit courts to redraft claims" and "must construe the claims based on the patentee's version of the claim as he himself drafted it." *Process Control Corp. v.*

5

*HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999). If Aevoe had wanted to require that the touch screen protector be removable "without leaving *any* adhesive residue," it could have. But it did not. Accordingly, iBlason's construction should be rejected and the Court should adopt the plain meaning of "without leaving adhesive residue."

### D.   "Micro-particles"

Aevoe proposes here to construe this term exactly as this Court did in 2013. *Aevoe v. AE Tech Co. Ltd.*, Case No. 2:12-cv-00053-GMN-RJJ, ECF No. 287 (Claim Construction Order) at 33:10-11; *see also id.* at 28-31. Where a previous claim construction order "addresses identical or similar issues of claims construction, it can be viewed as persuasive and highly relevant, rather than binding, authority." *Verizon California Inc. v. Ronald A. Katz Tech. Licensing, P.A.*, 326 F. Supp. 2d 1060, 1069 (C.D. Cal. 2003). i-Blason offers no reason why this Court should adopt a different construction. Moreover, i-Blason's proposed alternative cannot be correct, because it improperly limits the invention to a specific example in the specification that would render one of the '942 Patent's claims nonsensical.

The `942 Patent teaches the use of "micro-particles" to avoid certain problems that arise in connection with touch-screen protectors. These micro-particles can be used to reduce static effects and other unwanted distortions on both the side facing the touch-sensitive screen (Claim 5) and the side facing the user (Claim 6). The patent amply describes how these micro-particles can be deployed, and nothing in the specification requires that micro-particles can never come in contact with the touch screen *unless pressed*; indeed, it is quite obvious that the micro-particles in Claim 6 never come into contact with the touch screen at all—they are on the other side of the plastic film.

i-Blason's construction focuses on one specific example in the specification, which addresses a particular implementation of micro-particles on the back side of the plastic film. But this one embodiment does not require that, in all instances, micro-particles be "small enough to not contact the touch screen unless the touch screen protector is pressed against the touch screen portion." The Federal Circuit "has repeatedly 'cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification.'" *Imaginal Systematic, LLC v. Leggett & Platt, Inc.*, 805 F.3d 1102, 1109-10 (Fed. Cir. 2015). The specification never limits the micro-

6

particles to a specific size or dimension; nothing in the specification requires that the micro-particles be shorter than the spacer, as i-Blason argues and its construction implies. Resp. Br. at 10. Rather, the specification describes that the micro-particles "can be of various shapes, such as the column shape and the wave shape. The density of micro-particles are optimized such that they are high enough for providing anti-static effects but not too high as to adversely affect the quality of images that are viewed through the window." `942 Pat. 4:43-48.

i-Blason's reference to the Kitaguchi prior art is no help here. Aevoe was not called upon during examination to distinguish the shape or size of its micro-particles from the surface features claimed by Kitaguchi. Instead, Aevoe distinguished a "spacer comprising countless dots to separate the cover sheet and the display screen" from a "spacer along the outer perimeter of the plastic film." Dkt. No. 103 (Resp. Br., Ex. 2, Examination support document dated 2011-08-15) at 10, 12. In making this distinction, Aevoe did not commit to a particular set of dimensions for micro-particles; it instead explained that its "spacer" runs along the outer perimeter of the plastic film while Kitaguchi's spacer is distributed across the entire film in the form of "countless dots." *Id*. at 12. Nowhere is there any suggestion that Aevoe's "micro-particles" are larger or smaller than Kitaguchi's "countless dots."

"Unless the patent otherwise provides, a claim term cannot be given a different meaning in the various claims of the same patent." *Georgia-Pac. Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1331 (Fed. Cir. 1999), *opinion amended on re'g*, 204 F.3d 1359 (Fed. Cir. 2000). Thus, the term "micro-particles" in the `942 Patent is presumed to mean the same thing when used in different claims of the same patent. *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995) (claim term found in different claims must be interpreted consistently). The '942 Patent describes "micro-particles" appearing on both the back side (Claim 5) and front side (Claim 6) of the patented touch screen protector. "It is most preferable for the film of the screen protector ... to include micro-particles on both sides." `942 Pat. 4:57-59. The micro-particles in Claim 6 never come in contact with the touch screen portion of the electronic device because they are on the opposite (user-facing) side. i-Blason never explains how a construction that requires micro-particles to be "small enough to not contact the touch screen *unless the touch screen protector is pressed*

*against the touch screen portion*" could possibly inform the jury of the proper dimensions of the micro-particles *on the other side of the protector*, as Claim 6 teaches.  i-Blason's proposed construction would render Claim 6 nonsensical, and "[a] claim construction that renders asserted claims facially nonsensical 'cannot be correct.'" *Becton, Dickinson & Co.*, 616 F.3d at 1255.  Thus, the term "micro-particles" cannot have a specific size or shape limitation—the phrase merely means "small elements located on the plastic film of a touch screen protector."

## III.  CONCLUSION

The language of the '942 Patent is straightforward and requires minimal clarification.  The Court should accord the phrases "touch screen protector," "plastic film," and "without leaving adhesive residue" their plain and ordinary meanings, and construe "micro-particles" to mean "small elements located on the plastic film of a touch screen protector."

Dated: October 17, 2016                          Respectfully submitted,

                                                    McDONALD CARANO WILSON LLP

By:  /s/  Craig A. Newby
      JEFF SILVESTRI (NV # 5779)
      Craig A. Newby (NV #8591)
      2300 W. Sahara Avenue, Suite 1200
      Las Vegas, NV  89102
      Telephone:  702.873.4100
      Email:   jsilvestri@mcdonaldcarano.com
                  cnewby@mcdonaldcarano.com

      David S. Bloch (appearing *pro hac vice*)
      Jennifer A. Golinveaux (appearing *pro hac vice*)
      Thomas J. Kearney (appearing *pro hac vice*)
      WINSTON & STRAWN LLP
      101 California Street
      San Francisco, CA  94111-5894
      Telephone:         (415) 591-1000
      Facsimile:          (415) 591-1400
      Email:    dbloch@winston.com
                  jgolinveaux@winston.com
                  tkearney@winston.com

      *Attorneys for Plaintiff*
      *AEVOE CORP.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of McDonald Carano Wilson LLP, and that on the 17th day of October, 2016, a true and correct copy of the foregoing **PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF** was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification.

/s/ Marianne Carter
An employee of McDonald Carano Wilson LLP